# GOTTLIEB & ASSOCIATES
### ATTORNEYS

150 E. 18th St., Suite PHR • New York, NY 10003
Tel (212) 228-9795 • Fax (212) 982-6284
NYJG@aol.com

August 17, 2021

**VIA ECF**

The Honorable John G. Koeltl
United States District Court Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

```
The application to file the attached Amended Complaint
is granted. The Motion to Dismiss, ECF No. 26, is
denied without prejudice as moot. Defendant should
respond to the Amended Complaint by September 8, 2021.
Plaintiff should respond to any renewed Motion to
Dismiss by September 29, 2021. Defendant's reply, if
any, should be filed by October 9, 2021.

SO ORDERED.

New York, NY        /s/ John G. Koeltl
August 18, 2021     John G. Koeltl, U.S.D.J.
```

Re:    *Williams v. Gilbert H. Wild II, LLC,*
       Case No.: 1:21-cv-1491-JGK

Dear Judge Koeltl,

    The undersigned represents Milton Williams, on behalf of himself and all other persons similarly situated ("Plaintiff") in the above referenced action against Gilbert H. Wild II, LLC ("Defendant"). In light of the Defendant's Motion to Dismiss filed on August 6, 2021 (Dkt. 26) the undersigned respectfully seeks leave to file an Amended Complaint.[1] Pursuant to Fed. R. Civ. P. 15(a)(2) - "[t]he Court should freely grant leave when justice requires." Furthermore, the filing of an Amended Complaint would not prejudice or disadvantage the Defendant in this action. An Amended Complaint will be timely filed and address the alleged deficiencies raised by the Defendant's Motion to Dismiss. The filing of the Amended Complaint will also render the Defendant's currently pending Motion to Dismiss moot.

    Thank you for your attention to this matter. Should the Court have any questions, please do not hesitate to contact the undersigned attorney.

Respectfully submitted,

**GOTTLIEB & ASSOCIATES**

*/s/Michael A. LaBollita, Esq.*

---

[1] Proposed Amended Complaint attached hereto.

Michael A. LaBollita (ML-9985)
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
michael@Gottlieb.legal

*Attorneys for Plaintiffs*

cc: All counsel of record via ECF


SO ORDERED:


_____
United States District Court Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| MILTON WILLIAMS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>GILBERT H. WILD II, LLC,<br><br>Defendant. | <u>ECF CASE</u><br><br>No.: 1:21-cv-1491<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>INTRODUCTION</u>

1.     Plaintiff, MILTON WILLIAMS, on behalf of himself and all other persons similarly situated, asserts the following claims against Defendant, GILBERT H. WILD II, LLC, as follows.

2.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet their definition have limited vision. Others have no vision.

3.     In a September 25, 2018 letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[1]

4.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually-impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually-impaired persons live in the State of New York.

5.      Plaintiff brings his civil rights action against GILBERT H. WILD II, LLC, ("Defendant" or "Gilbert H. Wild") for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

6.      Because Defendant's website, https://www.gilberthwild.com/, (the "Website" or "Defendant's website"), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

---

[1] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018) (available at https://images.cutimes.com/contrib/content/uploads/documents/413/152136/adaletter.pdf) (last accessed July 13, 2020).

7.     By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among those persons that Title III was meant to redress.

8.     This discrimination is particularly acute during the current COVID-19 global pandemic. According to the Centers for Disease Control and Prevention ("CDC"), Americans living with disabilities are at higher risk for severe illness from COVID-19 and, therefore, are recommended to shelter in place throughout the duration of the pandemic.[2] This underscores the importance of access to online retailers, such as Defendant, for this especially vulnerable population.

9.     The COVID-19 pandemic is particularly dangerous for disabled individuals.[3] The overwhelming burden on hospitals is leading to a worry that the emergency services will ration treatment. Disabled individuals are in fear that their diminished capacity to communicate will affect their treatment.[4] Public health experts

---

[2] See Centers for Disease Control and Prevention website, Coronavirus Disease 2019 (2019), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last accessed July 13, 2020) ("Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.").

[3] See The New York Times, 'It's Hit Our Front Door': Homes for the Disabled See a Surge of Covid-19 (2020), available at https://www.nytimes.com/2020/04/08/nyregion/coronavirus-disabilities-group-homes.html?smid=fb-nytimes&smtyp=cur (last accessed July 13, 2020) ("As of Monday, 1,100 of the 140,000 developmentally disabled people monitored by the state had tested positive for the virus, state officials said. One hundred five had died — a rate far higher than in the general population").
[4] See The Atlantic, Americans With Disabilities Are Terrified (2020), available at https://www.theatlantic.com/politics/archive/2020/04/people-disabilities-worry-they-wont-get-treatment/609355/ (last accessed July 13, 2020) (explaining that disabled individuals are inherently more susceptible to the virus, leading to complications in hospital in which the individuals are unable to effectively communicate with doctors while intubated).

expect social distancing to extend through 2022, and with uncertainty surrounding businesses transitioning back to normal operations, the importance of accessible online services has been heightened. During these unprecedented times, disabled individuals risk losing their jobs, experiencing difficulty acquiring goods and services like health care, and not having the information they need to stay safe.[5]

<u>JURISDICTION AND VENUE</u>

10.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

11.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

12.     Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

13.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to

---

[5] *See* Slate, The Inaccessible Internet 2020, available at
https://slate.com/technology/2020/05/disabled-digital-accessibility-pandemic.html (last accessed July 13, 2020).

other blind and other visually-impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's Website while attempting to access the website from his home in New York County. These access barriers[6] that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's Website. This includes, Plaintiff attempting to obtain information about Defendant's online retail merchandise.[7]

14. Defendant participates in New York's economic life by clearly performing business over the Internet. Through its Website, Defendant entered into contracts for the sale of its products and services with residents of New York. These online sales contracts involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017). *see also*, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U. S. ____ (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products there.)

---

[6] After pressing the "Shop" button, the expanded submenu is displayed and was announced, but after tabbing twice the focus left the list of submenu items and moved to the "About Us" menu button. The rest of the links in the Shop submenu were not announced. *Copy of Expert's Accessibility report* as well as Credentials of Michael R. McCaffrey (CPACC) annexed hereto as Exhibit A.

[7] The "cart" icon is not labeled. When the accessibility widget is enabled, the cart is announced as "White and black frame illustration graphic." Id.

*see also*, *South Dakota v. Wayfair, Inc.*, 585 U. S. ____ (2018); *see also, Godfried v. Ford Motor Co.*, 2021 US Dist LEXIS 87012 [D Me May 6, 2021, No. 1:19-cv-00372-NT].

15.    The Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

16.    Plaintiff, MILTON WILLIAMS, at all relevant times, is a resident of New York, New York.

17.    Plaintiff is a blind, visually-impaired handicapped person and a member of member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

18.    Defendant, GILBERT H. WILD II, LLC, is and was, at all relevant times herein, a Arkansas Limited Liability Company with its principal executive office located at 2944 State Hwy 37, Reeds, MO 64859. Defendant operates the Gilbert H. Wild online retail store as well as the Gilbert H. Wild website and advertises, markets, and operates in the State of New York and throughout the United States.

19.    Defendant, GILBERT H. WILD II, LLC, operates the Gilbert H. Wild online retail store across the United States. This online retail store constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods including information about purchasing plant nursery items such as perennials, plants, flowers, bulbs and other products available online for purchase, and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies.

20. Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage of Defendant's online retail stores.

<u>NATURE OF ACTION</u>

21. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

22. In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently utilize in order to access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

23. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

-7-

24.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

25.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

26.     Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

a.      A text equivalent for every non-text element is not provided;

b.      Title frames with text are not provided for identification and navigation;

c.      Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.     The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

STATEMENT OF FACTS

Defendant's Barriers on Its Website

27.     Defendant offers the commercial website, https://www.gilberthwild.com/, to the public. The website offers features which should allow all consumers to access the goods and services offered by the Defendant and which Defendant ensures delivery of such goods throughout the United States including New York State. The goods and services offered by Defendant include, but are not limited to, the following, which allow consumers to: purchase plant nursery items such as perennials, plants, flowers, bulbs and other products available online for purchase, and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies.

28.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered thereby. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's numerous goods, services and benefits offered to the public through the Website.

29.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a

-10-

proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on separate occasions using the JAWS screen-reader.

30.     During Plaintiff's visits to the Website, the last occurring in December, 2020, in an attempt to purchase a product from the Defendant, the Plaintiff encountered multiple access barriers that denied Plaintiff a shopping experience similar to that of a sighted person and full and equal access to the goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the goods, and services of the Website by being unable to purchase plant nursery items such as perennials, plants, flowers, bulbs and other products available online for purchase, and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies.

31.     The Plaintiff intends to immediately revisit the Website to purchase a product from the Defendant as soon as the access barriers are removed from the Website.

32.     While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired persons that include, but are not limited to, the following:

        a.      Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the keyboard moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, Defendant's

visually-impaired customers are unable to determine what is on the website, browse, or make any purchases;

        b.     Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. They can introduce confusion for keyboard and screen-reader users;

        c.     Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

        d.     Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

33.    Many pages on the Website also contain the same title elements. This is a problem for the visually-impaired because the screen reader fails to distinguish one page from another. In order to fix this problem, Defendant must change the title elements for each page.

34.    The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually-impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered. For example, upon coming across a link of interest, Plaintiff was redirected to an error page. However, the screen-reader failed to communicate that the link was broken. As a result, Plaintiff could not get back to his original search.

35.     The "cart" icon is not labeled. When the accessibility widget is enabled, the cart is announced as "White and black frame illustration graphic."



36.     After pressing the "Shop" button, the expanded submenu is displayed and was announced, but after tabbing twice the focus left the list of submenu items and moved to the "About Us" menu button. The rest of the links in the Shop submenu were not announced.

### 2.4.3 – Focus Order

**URL:**     https://www.gilberthwild.com/#



37.     The shipping cost calculator is not accessible. The Country dropdown and the zip code fields are not labeled. When a user navigates to the zip code field then they hear "edit blank" and they only hear "combo box united states collapsed" when they navigate to the country field. The onscreen labels are not announced when users tab to these fields.

4.1.2 - Name, Role, Value



38.    The "Same as Billing Address" checkbox is not labeled correctly, when on focus it is only announced as "0 check box not checked."

### 2.4.6 – Headings and Labels

URL:          https://www.gilberthwild.com/custinfo.asp



<u>Defendant Must Remove Barriers To Its Website</u>

39.     Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the goods, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

40.     These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's Website and enjoying it equal to sighted individuals because: Plaintiff was unable to use and enjoy the Website in the same manner as sighted

individuals do, preventing Plaintiff from using the Website to purchase items and to view the items.

41.     If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

42.     Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired persons.

43.     Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

        a.      Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

        b.      Failure to construct and maintain a website that is not sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

        c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

44.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

45.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

46.     Because Defendant's Website is not and has never been fully accessible, and because, upon information and belief, Defendant does not have, and has never had, adequate corporate policies that are reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring Defendant to:

a) Retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist in improving the accessibility of its Website, including all third-party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by visually-impaired persons;

b) Work with the Web Accessibility Consultant to ensure all employees involved in Website and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

c) Work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by visually-impaired persons on an ongoing basis;

d) Work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) Incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

-18-

f) Work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

g) Directly link from the footer on each page of its Website, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that visually-impaired persons have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant's Website;

h) Accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i) Provide a notice, prominently and directly linked from the footer on each page of its Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j) Provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k) Train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l) Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology; and

m) Plaintiff, his counsel, and their experts monitor the Website for up to two years after the Mutually Agreed Upon Consultant validates the Website are free of accessibility errors/violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and their experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides Defendant.

47. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by visually-impaired persons.

48. If the Website was accessible, Plaintiff and similarly situated blind and visually-impaired persons could independently shop for and otherwise research the Defendant's products via the Website.

49. Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

50. Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually-impaired consumers.

51. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

<u>CLASS ACTION ALLEGATIONS</u>

52. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

53. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York State Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

54. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

55. Common questions of law and fact exist amongst the Class and Sub-Classes, including:

    a. Whether Defendant's Website is a "public accommodation" under the ADA;

    b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYSHRL or NYCHRL;

c.      Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the ADA; and

d.      Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the NYSHRL or NYCHRL.

56.     Plaintiff's claims are typical of the Class and Sub-Classes. The Class, and Sub-Classes, similarly to the Plaintiff, are severely visually-impaired or otherwise blind persons, and claim that Defendant has violated the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the Class and/or the Sub-Classes.

57.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, including ADA litigation and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

58.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions are common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of their litigation.

59.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by visually-impaired persons throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

60.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

62.     Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage of Defendant's online retail store

63.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

64.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation,

which is equal to the opportunities afforded to other individuals. 42 U.S.C. §
12182(b)(1)(A)(ii).

65.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination
also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when
        such modifications are necessary to afford such goods, services, facilities,
        privileges, advantages, or accommodations to individuals with disabilities, unless
        the entity can demonstrate that making such modifications would fundamentally
        alter the nature of such goods, services, facilities, privileges, advantages or
        accommodations; and a failure to take such steps as may be necessary to ensure
        that no individual with a disability is excluded, denied services, segregated or
        otherwise treated differently than other individuals because of the absence of
        auxiliary aids and services, unless the entity can demonstrate that taking such
        steps would fundamentally alter the nature of the good, service, facility, privilege,
        advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

66.     The acts alleged herein constitute violations of Title III of the ADA, and
the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of
persons under the ADA, has a physical disability that substantially limits the major life
activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore,
Plaintiff has been denied full and equal access to the Website, has not been provided
services that are provided to other patrons who are not disabled, and has been provided
services that are inferior to the services provided to non-disabled persons. Defendant has
failed to take any prompt and equitable steps to remedy its discriminatory conduct. These
violations are ongoing.

67.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set
forth and incorporated therein, Plaintiff, requests relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

-24-

68.     Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

70.     Defendant's Website operates in the State of New York and constitutes an online sales establishment and a place of public accommodation within the definition of N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant's online retail establishment.

71.     Defendant is subject to New York Human Rights Law because it owns and/or operates its Website in the State of New York. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

72.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated therewith to be completely inaccessible to the blind. Their inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

73.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities,

privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden".

74.    Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

75.    Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

76.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

        a.    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.     constructed and maintained a website that is not sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

77.    Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

78.    Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and New York State Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the Sub-Class Members will continue to suffer irreparable harm.

79.    Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

80.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

81.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

82.    Under N.Y. Exec. Law § 297 and the remedies, procedures and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>THIRD CAUSE OF ACTION</u>
VIOLATIONS OF THE NYCHRL

-27-

83.     Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

85.     Defendant's website is an online sales establishment and a place of public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its online sales establishment.

86.     Defendant is subject to NYCHRL because it owns and/or operates its Website in the City of New York, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

87.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing its Website and the services integrated therewith to be completely inaccessible to the blind. The inaccessibility denies blind consumers full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

88.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to

enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

89.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

        a.      constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

        b.      constructed and maintained a website that is not sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

        c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

90.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

91.     As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and members of the proposed class and Sub-Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Sub-Class will continue to suffer irreparable harm.

92.     Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

93. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

94. Plaintiff is also entitled to reasonable attorneys' fees and costs.

95. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

FOURTH CAUSE OF ACTION
DECLARATORY RELIEF

96. Plaintiff, on behalf of himself and the Class and New York State and City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods and services of its Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*. prohibiting discrimination against the blind.

98. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.,* and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.,* and the laws of New York

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and Sub-Classes for violations of their civil rights under New York State Human Rights Law and City Law;

f. Pre- and post-judgment interest;

g. An award of costs and expenses of the action; and

h.     Reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc*., Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. *See also, Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11); and

i.     Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
           August 17, 2021

**GOTTLIEB & ASSOCIATES**

*/s/Michael A. LaBollita, Esq.*

Michael A. LaBollita (ML-9985)
Jeffrey M. Gottlieb (JG-7905)
Dana L. Gottlieb (DG-6151)
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
Michael@Gottlieb.legal
Jeffrey@Gottlieb.legal
Dana@Gottlieb.legal

*Attorneys for Plaintiffs*

# <u>EXHIBIT A</u>

Copy of Expert's Accessibility report as well as Credentials of
Michael R. McCaffrey (CPACC)

# ADA & WCAG 2.1 Website Compliance Audit

**Prepared by:**



[www.ADASure.com](www.ADASure.com)
8/5/2021

**Prepared for:**
Gottlieb & Associates Attorneys at Law

**References**
**WCAG 2.1 guidelines (level A and AA)**
https://www.w3.org/WAI/WCAG20/quickref/?currentsidebar=%23col_customize&levels=aaa
https://www.wuhcag.com/wcag-checklist/

**Court Rulings noting ADA guidelines apply to websites**
16-CV-23020-RNS, Gil v. Winn-Dixie Stores, Inc., Southern District of Florida
National Federation of the Blind v. Target Corp (N.D. Cal. 2007) 582 F .Supp.2d 1185
Andrews v. Blick Art Materials, LLC, No. 17-CV-767, 2017 U.S Dist. LEXIS 121007 (S.D.N.Y. July 31, 2017)
Markett v. Five Guys Enters. LLC, No. 17-CV-788 (KBF), 2017 U.S Dist. LEXIS 115212 (S.D.N.Y July 21, 2017)
**Supreme Court allows blind people to sue retailers if their websites are not accessible**. The justices let stand an appeals court ruling
that the Americans With Disabilities Act protects access to retailer websites and apps.

Conclusion; the website www.gilberthwild.com is not reasonably accessible to visually impaired users.

Website audited: https://www.gilberthwild.com/
Company location: New York, New York
Date and time of audit: August 05, 2021 5:00am

| WCAG 2.1 - level A | | | | |
|---|---|---|---|---|
| Guideline | Brief Explanation | Pass/Fail | Severity | Comments |
| 1.3.1 – Info and Relationships | Information, structure, and relationships conveyed through presentation can be programmatically determined or are also available in text. | Fail | High | Barriers are present on the Gift Certificate order form which may prevent some users from making a purchase. For example, the Size/Color field is announced as "txt variant var." |
| 2.4.3 – Focus Order | Website provides focus in a logical order that preserves meaning and operability. | Fail | High | After pressing the "Shop" button, the expanded submenu is displayed and was announced, but after tabbing twice the focus left the list of submenu items and moved to the "About Us" menu button. The rest of the links in the Shop submenu were not announced. |
| 2.4.4 – Link Purpose (In Context) | Link purpose is clear from its context. | Fail | Medium | Users must be notified if a link directs them to a new website. For example, if a user follows any of the social media links, then a new browser is opened and users are taken to a third-party website. When the widget is enabled, a text message is displayed above the first social media link, but it's not announced. Notice is only provided to sighted users. |
| 2.5.3 – Label in Name | Any component that has text or images of text must have an accessible name shown in visible text. | Fail | High | The 'Continue' button on the catalog request form is not labeled. It's announced only as "button" which may prevent some users from completing the form. |
| 3.3.2 – Labels or Instructions | Elements are labeled and give instructions. | Fail | High | The "cart" icon is not labeled. When the accessibility widget is enabled, the cart is announced as "White and black frame illustration graphic." |

| 4.1.2 – Name, Role, Value | All elements are built for accessibility. | Fail | Medium | The shipping cost calculator is not accessible. The Country dropdown and the zip code fields are not labeled. When a user navigates to the zip code field then they hear "edit blank" and they only hear "combo box united states collapsed" when they navigate to the country field. The onscreen labels are not announced when users tab to these fields. |
| Total Fails | | 6 | | |

## WCAG 2.1 - level AA

| Guideline | Brief Explanation | Pass/Fail | Severity | Comments |
|-----------|-------------------|-----------|----------|----------|
| 1.4.5 – Images of Text | Website doesn't use images of text (screen readers are unable to read). | Fail | Critical | The PDF is not accessible to screen reader users. The screen capture shows the list of failures found by the Adobe Accessibility checker. One issue in particular is the graphic of the root system which contains embedded text about specific planting zones, temperatures, and depth of planting. Neither the graphic nor the content in the graphic is announced and the text is not available elsewhere on the page. In fact, the section beneath the graphic reads "Plant eyes at proper depth - see diagram." Users are aware there is a graphic, but they cannot access it. |
| 2.4.6 – Headings and Labels | Headings and labels are clear. | Fail | High | The "Same as Billing Address" checkbox is not labeled correctly, when on focus it is only announced as "0 check box not checked." |
| 2.4.7 – Focus Visible | Ensure keyboard focus is visible and clear. | Fail | High | A visible keyboard focus is not available for all elements. For example, in the attached screen capture, you can see from the screen reader window that the widget icon was being announced, but a visible focus is not present. |

| 3.3.3 – Error Suggestion | Suggest fixes when users make errors. | Fail | High | Error suggestions are not announced when they're displayed and focus doesn't automatically move to them. |
|---|---|---|---|---|
| 4.1.3 – Status Messages | If a status message is presented and focus is not set to that message then the message must be announced to screen reader users. | Fail | High | Users are taken to a Thank You page after they submit a catalog request form, but this is not announced. Screen reader users don't hear a confirmation after they submit the form and they aren't alerted that they're taken to a thank you page. Instead, they're unexpectedly taken to a new page and focus starts at the top, not at the thank you message. Users must then press the tab key approximately 17 times and then they must know to switch to arrow key navigation. At that point, they'll hear six announcements of "blank", the thank you message and then the unlabeled 'Continue' button. |
| **Total Fails** | | 5 | | |

| **Grand Total** | | 11 | | |

**URL:**    https://www.gilberthwild.com/prodinfo.asp?number=GC1&variation=$50.0



Barriers are present on the Gift Certificate order form which may prevent some users from making a purchase. For example, the Size/Color field is announced as "txt variant var."

2.4.3 – Focus Order

URL:                    https://www.gilberthwild.com/#



After pressing the "Shop" button, the expanded submenu is displayed and was announced, but after tabbing twice the focus left the list of submenu items and moved to the "About Us" menu button. The rest of the links in the Shop submenu were not announced.

**URL:**  https://www.gilberthwild.com/



Users must be notified if a link directs them to a new website. For example, if a user follows any of the social media links, then a new browser is opened and users are taken to a third-party website. When the widget is enabled, a text message is displayed above the first social media link, but it's not announced. Notice is only provided to sighted users.

2.5.3 - Label in Name

**URL:**   https://www.gilberthwild.com/inforequest.asp



The 'Continue' button on the catalog request form is not labeled. It's announced only as "button" which may prevent some users from completing the form.

### 3.3.2 – Labels or Instructions

**URL:** https://www.gilberthwild.com/



The "cart" icon is not labeled. When the accessibility widget is enabled, the cart is announced as "White and black frame illustration graphic."

4.1.2 - Name, Role, Value

**URL:**     https://www.gilberthwild.com/basket.asp

https://www.gilberthwild.com/estimate_shipping.asp

Country    United States ⌄

Zip Code    [          ]    Submit

Close Window

combo box  United States  collapsed
edit  blank
combo box  United States  collapsed
edit  blank
Show Speech Viewer on Startup  check box  checked  Alt+s

The shipping cost calculator is not accessible. The Country dropdown and the zip code fields are not labeled. When a user navigates to the zip code field then they hear "edit blank" and they only hear "combo box united states collapsed" when they navigate to the country field. The onscreen labels are not announced when users tab to these fields.

## 1.4.5 - Images of Text

**URL:** https://www.gilberthwild.com/



The PDF is not accessible to screen reader users. The screen capture shows the list of failures found by the Adobe Accessibility checker. One issue in particular is the graphic of the root system which contains embedded text about specific planting zones, temperatures, and depth of planting. Neither the graphic nor the content in the graphic is announced and the text is not available elsewhere on the page. In fact, the section beneath the graphic reads "Plant eyes at proper depth - see diagram." Users are aware there is a graphic, but they cannot access it.

**URL:** https://www.gilberthwild.com/custinfo.asp



The "Same as Billing Address" checkbox is not labeled correctly, when on focus it is only announced as "0 check box not checked."

2.4.7 - Focus Visible

**URL:**            https://www.gilberthwild.com/Aboutus.asp



A visible keyboard focus is not available for all elements. For example, in the attached screen capture, you can see from the screen reader window that the widget icon was being announced, but a visible focus is not present.

### 3.3.3 – Error Suggestion

**URL:** https://www.gilberthwild.com/login.asp



Error suggestions are not announced when they're displayed and focus doesn't automatically move to them.

4.1.3 - Status Messages

**URL:** https://www.gilberthwild.com/thankyou.asp



Users are taken to a Thank You page after they submit a catalog request form, but this is not announced. Screen reader users don't hear a confirmation after they submit the form and they aren't alerted that they're taken to a thank you page. Instead, they're unexpectedly taken to a new page and focus starts at the top, not at the thank you message. Users must then press the tab key approximately 17 times and then they must know to switch to arrow key navigation. At that point, they'll hear six announcements of "blank", the thank you message and then the unlabeled 'Continue' button.

**Michael R. McCaffrey (CPACC)**

2295 S. Hiawassee Rd. #104

Orlando, FL 32835

(813) 944-0104

Michael.McCaffrey@adasure.com

Linkedin

Website

**EXPERIENCE** ─────────────────────────────────

**ADASure - Founder**

2016 - Present

Schedule, run and investigate results from manual and automated and manual testing of websites, videos, PDFs, and other digital assets for compliance.

- Perform and manage accessibility testing according to industry standards using manual and automated testing.
- Guidance on prioritization and remediation of accessibility issues according to industry standards and practical experience.
- Project scoping and cost estimates.
- ADA Conference speaker – Central States Private Education Network (CSPEN) 2018, Chicago. Oklahoma Board of Private Vocational Schools (OBPVS) 2019, Oklahoma. Florida Virtual Entrepreneur Center (FLVEC) in 2019 and 2020.

| | |
|---|---|
| 2016 – 2018 | Ultimate Medical Academy – Compliance Consultant |
| 2016 – 2017 | Hooah LLC – Accessibility Consultant (DoD project) |
| 2014 – 2015 | Weston Education Group – Head of Marketing |
| 2013 – 2014 | Delta Education – VP of Marketing |
| 2011 – 2013 | EduK Group (Puerto Rico) – Director of Marketing and Operations |
| 2009 – 2011 | Empire Education Group – VP of Marketing |
| 2007 – 2009 | JPMorgan Chase – VP of Marketing |
| 2003 – 2007 | JPMorgan Chase – Software Developer |
| 2002 – 2003 | Thomson Reuters – Manager of Business Engineering |
| 1998 – 2001 | Ernst & Young – Senior Consultant (software engineering) |

**Expert Deposition for the following Federal cases:**
- 17-cv-22898: Gomez v Fitness International
- 17-cv-22747: MGC Andres Gomez v. General Nutrition Corporation
- 17-cv-2110: Castillo v. Jo-Ann Stores, LLC
- 17-cv-01999 Price v Orlando Health

**Expert Reports for the following Federal case:**
- 1:17-cv-22668: Juan Carlos Gil v. Albion Associates, Ltd.

**Expert Reports for the Following State Cases:**
- Supreme Court for the State of New York, County of 156596/2017 Juan Carlos Gil v. American Express Travel Related Services Company, Inc.

**EDUCATION** ───────────────────────────────────

<u>Nova Southeastern University</u> - Ft. Lauderdale, FL, **Ph.D., Information Science**, 2017-2022 (on hold)

<u>The University of Florida</u> – Gainesville, FL, Graduate certificate – **Communicating Value Online and Web Conversion**, 2016-2017

<u>Rollins College</u> – Winter Park, FL, **Mini-MBA,** 2015 - 2016

<u>The Pennsylvania State University</u> - Malvern, Pennsylvania, **M.S., Information Science,** 2005

<u>Drexel University</u> - Philadelphia, Pennsylvania, **B.S., Computer Information Systems,** 1998

**ACADEMIC EXPERIENCE** ──────────────────────────

<u>Wilmington University</u>, Wilmington, Delaware

Adjunct Professor, Computer Information Science 2006-2009

**MEMBERSHIPS** ─────────────────────────────────
- The International Association of Accessibility Professionals

**ACCESSIBILITY AND ADA TRAINING** ──────────────────
- International Association of Accessibility Professionals (IAAP) Certified Professional in Accessibility Core Competencies (CPACC) Certification - 2018
- IAAP CPACC Certification Preparation Training – Deque Systems 2018
- Section 508 and digital accessibility – Hooah LLC, Part of the DoD program; "Defense Activity for Non-Traditional Education Support (DANTES), 2016
- Website accessibility fundamentals – JPMorgan Chase, 2005
- Software development and accessibility – Ernst & Young 1999
- Automated and manual software testing – Ernst & Young 2000

**CERTIFICATIONS** ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

- Google AdWords (Display) - 2017
- Google AdWords (Search) - 2017
- Emails Messaging Optimization - MECLABS Institute, 2016
- ROI Mastery Certification - ROI Institute, Inc., 2015
- Value Proposition Certification - MECLABS Institute, 2015
- Search Engine Marketing Certification - Marin Software, 2012
- Java Programming I, Sun Microsystems, 2000
- Java Programming Advanced, Sun Microsystems, 2000
- Object-Oriented Programming and The Rational Unified Process - IBM-2000